**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 2 0 2001

JAMES W. McCORMACK, CL.
By:_____
DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) |
| PATIENT TRANSFER SERVICE, INC.,<br>DONALD WISE, KEVIN WISE, and<br>SHIRLEY WALLACE, | ) |
| Defendants. | ) |

Civ. No **4-01-CV-00478 SMR**

**JURY TRIAL DEMANDED**

This case assigned to District Judge **Reaso**
and to Magistrate Judge **Cavaneau**

### COMPLAINT

Plaintiff, the United States of America, for its complaint, alleges as follows:

### I.    INTRODUCTION

1. This is an action brought by the United States to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-33, to recover all available damages for unjust enrichment, and payment under mistake of fact, and to void fraudulent conveyances and secure any and all other appropriate remedies, including pre-judgment remedies, under the Federal Debt Collection Procedure Act, 28 U.S.C. § 3001, et seq. These claims arise out of the submission of false claims to the United States, and specifically the Medicare and Medicaid programs, for reimbursement of ambulance transport services for dialysis patients, and further arise out of fraudulent transfers of assets, which transfers were intended to and/or had the effect of impairing

1

and impeding the rights of the United States in obtaining recovery of debts owed to it.

## II.    JURISDICTION AND VENUE

2.  This action arises under the False Claims Act, as amended 31 U.S.C. §§ 3729-3733, the Federal Debt Collection Procedure Act, 28 U.S.C. § 3001, et seq., and at common law.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1331.

3.  This Court has personal jurisdiction over the defendants because they prepared and submitted their false claims and false statements to the United States, and/or were unjustly enriched, and/or engaged in fraudulent transfers in and from this district.

4.  Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(c), and under 31 U.S.C. § 3732(a).  At least one defendant can be found, resides, and transacts business within the district, and the acts proscribed by the False Claims Act occurred within the district.

## III.    PARTIES

5. Plaintiff is the United States of America, acting on behalf of the United States Department of Health and Human Services (HHS). HHS is an agency and instrumentality of the United States and its activities, operations and contracts are paid from federal funds. HHS has delegated the administration of the Medicare Program to its component agency, which at all times relevant to this Complaint was known as the Health Care Financing Administration (HCFA).  (HCFA

2

has since changed its name to Centers for Medicare and Medicaid Services (CMS)).

6. Defendant Patient Transfer Service, Inc. (PTS) is a corporation organized and existing under the laws of the State of Arkansas. At all times relevant to the Complaint, PTS provided emergency and non-emergency ambulance transportation in northeast Arkansas. At all times relevant to the Complaint, PTS was a participant in the Medicare and Medicaid programs within the Eastern District of Arkansas and provided ambulance services in that District.

7. Defendant Donald Wise is a citizen and resident of the State of Arkansas and is subject to the jurisdiction of this Court. At all times relevant to the Complaint, Donald Wise has been the sole owner of PTS.

8. Defendant Kevin Wise is a citizen and resident of the State of Arkansas and is subject to the jurisdiction of this Court. Kevin Wise has worked at PTS since approximately 1988. Since at least 1993, Kevin Wise has served as the General Manager of PTS. Kevin Wise is the brother of defendant Donald Wise.

9. Defendant Shirley Wallace is a citizen and resident of the State of Arkansas and is subject to the jurisdiction of this Court. Since approximately 1991, Wallace has been the Office Manager of PTS. Wallace is a cousin of Donald and Kevin Wise.

**IV.**   <u>OPERATION OF THE MEDICARE AND MEDICAID PROGRAMS</u>

10. Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, <u>et</u> <u>seq</u>., establishes the Health Insurance for Aged and Disabled Program, popularly known as the Medicare program.

11. The Medicare program is comprised of two parts.  Part A, which is not at issue in this case, provides hospitalization insurance for eligible individuals. 42 U.S.C. §§ 1395c - 1395i-5. Part B is a voluntary subscription program of supplementary medical insurance covering items and services other than hospitalization expenses, such as charges for ambulance transportation. 42 U.S.C. § 1395k(a)(2)(B).  An enrolled individual who receives a covered medical service can either pay for the service herself, and request reimbursement of 80% of the reasonable charge, or assign the right to reimbursement to the provider rendering the service, who collects as an assignee of the beneficiary under 42 U.S.C. § 1395u(b)(3)(B)(ii).

12. Reimbursement for Medicare claims is made by the United States through HCFA.  HCFA, in turn, assigns the task of paying Part B claims from the Medicare Trust Fund to private insurance carriers under 42 U.S.C. § 1395u.  HHS, through HCFA, administers the Medicare Part B Program in the State of Arkansas through a private insurance carrier, Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company (Blue Cross).

13. As the administrator for the Medicare Part B insurance program in Arkansas, Blue Cross receives requests for payment from ambulance providers, such as PTS, for medical services furnished to

4

Medicare beneficiaries.   Ambulance providers bill for services rendered to Medicare beneficiaries by submitting a Health Insurance Claim Form ("Medicare claim form") to Blue Cross.   The Medicare claim form used by ambulance providers is known as the HCFA-1490 form.   The provider furnishes and certifies to certain information on the HCFA-1490, including the identity of the patient, the provider number, the procedure code number, and a brief narrative explaining the diagnosis and the medical necessity for the service rendered.   In submitting Medicare claim forms, including the HCFA-1490, providers must certify that the information included on the form presents an accurate description of the services rendered and that the services were medically necessary.

14. Because it would not be feasible to review medical documentation before paying each claim, Blue Cross generally makes payment under Medicare Part B on the basis of the providers' certification included on the Medicare claim form.

15. Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, et seq., establishes the Medicaid program.   Medicaid is a joint federal-state program that provides health care benefits for certain groups, primarily the poor and disabled.   The United States provides matching funds to a state to fund the program and also ensures that the state complies with minimum standards in the administration of the program.

16. Each state must have a single State agency to administer the Medicaid program.   42 U.S.C. § 1396a(a)(5).   The Arkansas

Medicaid program is administered by the Arkansas Department of Human Services, Division of Medical Services (DMS).

17.  Ambulance providers bill Medicaid for services provided to Medicaid beneficiaries by submitting claim forms to DMS or its agent.  As with Medicare, these claim forms contain certain information regarding the service provided, upon which DMS relies in making payment to the ambulance provider.

**V.   GENERAL ALLEGATIONS**

**A. MEDICARE RULES FOR TRANSPORT OF DIALYSIS PATIENTS**

18.  Beginning in or around 1991, PTS became a participant in the Medicare Part B Program and began submitting claims to Blue Cross seeking Medicare reimbursement for ambulance services provided to patients who assigned their right of reimbursement to PTS.  Also beginning in or around 1991, PTS transported a) regular PTS customers to and from their places of residence for outpatient dialysis treatment, and b) other customers for emergency and non-emergency medical treatment.

19.  Medicare does not pay for any and all services furnished to beneficiaries, but only those which are "reasonable and necessary for the diagnosis or treatment of illness or injury ..." 42 U.S.C. § 1395y(a)(1)(A).  With respect to ambulance services in particular, Medicare covers such services only "where the use of other methods of transportation is contraindicated by the individual's condition, but only to the extent provided in regulations."  42 U.S.C. § 1395x(s)(7).

20. The Medicare regulations in effect during most of the time relevant to this Complaint (*i.e.*, prior to February 24, 1999) provided that Medicare Part B would pay for ambulance services only if "other means of transportation would endanger the beneficiary's health."  See 42 C.F.R. § 410.40(b)(1) (1998).

21. The Medicare Carriers Manual, which sets forth the rules and regulations for Medicare reimbursement, further describes the requirements for coverage of ambulance transport.  For example, the Carriers Manual states:

> Medical necessity is established when the patient's condition is such that use of any other method of transportation is contraindicated.  In any case in which some means of transportation other than an ambulance could be utilized without endangering the individual's health, whether or not such transportation is actually available, no payment may be made for ambulance service.

Carriers Manual at § 2120.2(A).

22. With respect to dialysis patients in particular, the Carriers Manual states, in relevant part:

> A beneficiary receiving maintenance dialysis on an outpatient basis is not ordinarily ill enough to require ambulance transportation for dialysis treatment. . . . Thus, if a claim for ambulance services furnished to a maintenance dialysis patient does not show that the patient's condition requires ambulance services, disallow it.

Carriers Manual at § 2120.3(J).

23. In addition to the Medicare statutes and regulations and the Carriers Manual, various materials received by PTS from Blue Cross and maintained in PTS' files, including an "Ambulance Handbook" and a periodic newsletter, further describe the

requirements for Medicare reimbursement of ambulance services in general, and dialysis patients in particular.

24. For example, the Blue Cross Ambulance Handbook, which PTS received and maintained in its files, explains on page 1:

> Medical necessity is established when the patient's condition is such that use of any other method of transportation is contraindicated. No payment may be made where some means of transportation other than an ambulance could be utilized without endangering the individual's health, whether or not such transportation is actually available.

Blue Cross Ambulance Handbook, Medicare Coverage Requirements § A, at p. 1.

25. The Ambulance Handbook also restates almost word for word the Carriers Manual provision regarding dialysis patients:

> A beneficiary receiving maintenance dialysis on an outpatient basis is not ordinarily ill enough to require ambulance transportation for dialysis treatment. . . . Thus, if a claim for ambulance services furnished to a maintenance dialysis patient does not show that the patient's condition requires ambulance service, it should be disallowed.

Id., The Destination § I, at p. 6.

26. PTS also received and maintained in its files the newsletter Blue Cross Provider's News, including the issue dated December 1, 1994, which stated, among other things:

**MEDICAL NECESSITY**

> Please be reminded that, to be covered, ambulance services must be medically necessary and reasonable. According to Medicare guidelines, medical necessity is established when the patient's condition is such that use of any other method of transportation is contraindicated. Ambulance services are NOT covered when some other means of transportation could be utilized without endangering the individual's health, whether or not such other transportation is actually available.

Provider's News, December 1, 1994 at p. 2.

27. The same issue of the Blue Cross Provider's News also had a separate article entitled, "Ambulance Services to ESRD [End Stage Renal Dialysis] Patients for Scheduled Transports," which stated, among other things:

> To be covered, ambulance services must be medically necessary and reasonable. As you have previously been advised, medical necessity is established when the patient's condition is such that use of any other method of transportation is contraindicated. No payment can be made for ambulance services where some other means of transportation could be utilized without endangering the individual's health, whether or not such transportation is actually available. A beneficiary receiving maintenance dialysis on an outpatient basis is not ordinarily ill enough to require ambulance transportation for dialysis treatment.

*Id.* at p. 5.

28. The regulations regarding ambulance transport were revised effective February 24, 1999. For services provided on or after that date, 42 C.F.R. § 410.40, "Coverage of Ambulance Services," provides, in relevant part:

> d) Medical necessity requirements--

> (1) General rule. Medicare covers ambulance services only if they are furnished to a beneficiary whose medical condition is such that other means of transportation would be contraindicated. For nonemergency ambulance transportation, the following criteria must be met to ensure that ambulance transportation is medically necessary:

> (i) The beneficiary is unable to get up from bed without assistance.

> (ii) The beneficiary is unable to ambulate.

> (iii) The beneficiary is unable to sit in a chair or wheelchair.

*Id.* Medically necessary transports to and from dialysis facilities are scheduled and, therefore, are "nonemergency" ambulance services. 64 Fed. Reg. 3637, 3640 (Jan. 25, 1999) (final rule).

29. In addition, effective February 24, 1999, Medicare established a requirement that "nonemergency, scheduled ambulance services," such as maintenance dialysis, are covered only if "the ambulance supplier, before furnishing the service to the beneficiary, obtains a written order from the beneficiary's attending physician certifying that the medical necessity requirements of paragraph (d)(1) of this section are met." 42 C.F.R. § 410.40(d)(2).

30. To obtain reimbursement for ambulance transport, the provider must submit and certify to details establishing that Medicare's medical necessity requirements were met.

### B. MEDICAID RULES FOR TRANSPORT OF DIALYSIS PATIENTS

31. Medicaid also applies medical necessity and documentation requirements for reimbursement of ambulance patients.

> Ambulance service for eligible Medicaid recipients is reimbursable when the ambulance transportation is medically necessary. It is the responsibility of the transportation provider to maintain documentation which will verify the medical necessity of transportation rendered.

Medicaid Manual: Transportation § 202 at p. II-2.

32. In order for ambulance services to be reimbursable, Medicaid requires written certification from a physician that transportation by ambulance is medically necessary. *Id.*, § 211, 212 at p. II-3.

33.   Section 212 "Scope" of the Medicaid Manual describes the
sites to and from which ambulance transport will be covered.
Section 212(b) states that transport may be covered "from the
patient's home or place of residence to a hospital."  However, the
section also states that when a recipient is transported to the
hospital, Medicaid will only pay for the transportation if the
recipient is admitted to the hospital, or "when the patient's
condition is an emergency medical condition in compliance with
Section 1867 of the Social Security Act [42 U.S.C. § 1395dd]."

34.   The term "emergency medical condition" is defined, in
relevant part, as:

> (A) a medical condition manifesting itself by acute
> symptoms of sufficient severity (including severe pain)
> such that the absence of immediate medical attention
> could reasonably be expected to result in-
>
>> (i) placing the health of the individual (or, with
>> respect to a pregnant woman, the health of the
>> woman or her unborn child) in serious jeopardy,
>>
>> (ii) serious impairment to bodily functions, or
>>
>> (iii) serious dysfunction of any bodily organ or part
>>
>> . . . .

42 U.S.C. § 1395dd(e)(1)(A).

35.   Transportation is covered "[f]rom a hospital to the
patient's home or place of residence following an inpatient
hospital stay." Medicaid Manual: Transportation § 212(i)(emphasis
added).

C.   PTS FALSE CLAIMS FOR TRANSPORT OF DIALYSIS PATIENTS

36. For at least the period June 30, 1997 to approximately June 1999, and, we anticipate that a reasonable opportunity for further investigation and discovery will establish that, for the period 1991 to June 1999, defendants PTS, Kevin Wise, and Shirley Wallace knowingly submitted or caused the submission of false claims to Medicare and Medicaid, and created false records and statements to get Medicare and Medicaid claims paid, as follows.

37. PTS failed to submit individualized claims for its regular dialysis patients describing the patients' medical condition on the day they were transported.  Rather, PTS created internal "billing scenarios" which were used over and over for the same patient, regardless of the patient's condition on a particular day.  PTS then submitted generic claims to Medicare through Blue Cross and to Medicaid through DMS in which PTS automatically and mechanically repeated that the dialysis patient being transported by ambulance was bed-confined, could only be moved by stretcher, and met the medical necessity requirements, or similar representations.  For example, during the period 1997-99, virtually every Medicare claim form submitted by PTS for dialysis patients represented that the patient was bed-confined and moved by stretcher, and that the transport was medically necessary, irrespective of the patient's actual condition.

38. In fact, many of the patients described in paragraph 37 above were not bed-confined or moved by stretcher, and they did not require ambulance transportation or qualify for ambulance transport

12

under Medicare or Medicaid requirements.  For example, patients often walked to or from the ambulance from their homes or the dialysis center; patients traveled in the front seat of the ambulance; and patients walked without assistance during their visits to the dialysis center.

39. Moreover, PTS claimed on its Medicare claim forms that patients were bed-confined and moved by stretcher, and that the transport was medically necessary, even when the information provided by its own paramedics indicated that the patient was able to sit, stand, or walk on the day of the ambulance service.  For example, in many instances, the emergency medical services narrative stated that the patient was walking, sitting in the front seat of the ambulance, or otherwise did not meet the medical necessity requirements on the day the patient received ambulance transport to dialysis treatment.  PTS also submitted claims to Medicaid for ambulance transports that did not meet Medicaid's requirements for the reasons set forth in paragraphs 36-39.

40. Defendants Kevin Wise and Shirley Wallace instructed PTS billing clerks to indicate on all Medicare claim forms for dialysis patients that such patients were bed-confined and moved by stretcher and that the transport was medically necessary, regardless of the patient's actual condition.  When questioned about this practice by billing clerks, Kevin Wise and Shirley Wallace informed the clerks that they had letters of medical necessity from the patients' doctors, when in fact in many cases they did not.

41. In addition, in March 1998, PTS and Kevin Wise instructed all employees in writing that "[a]ll dialysis patients will have to be transported on stretchers. No patients will be allowed to ride in the front of the ambulances." In August 1998 PTS, and we anticipate that a reasonable opportunity for further investigation and discovery will establish that, Donald Wise, again instructed all employees in writing that "[a]ll dialysis patients must be taken into and out of dialysis center on a stretcher. Due to Medicare requirements, this is mandatory." PTS required its employees to sign these statements. The purpose of transporting all dialysis patients on stretchers was to further PTS' fraudulent scheme of billing for all dialysis transports, when in fact many of the transports were not medically necessary and did not meet the requirements for Medicare or Medicaid reimbursement.

42. In or around 1993, PTS switched from paper to electronic claims submission. In January 1993, and again in September 1995, Kevin Wise, on behalf of PTS, signed agreements certifying that, among other things, all electronic claims would contain true, accurate, and complete information; that the provider would be solely responsible for the accuracy of all electronic claims; and acknowledging that the claims would be paid from federal funds, that the submission of electronic claims was a claim to payment from a federal program, and that anyone who misrepresented or falsified any record or information related to the claim submission was subject to fine or imprisonment upon conviction. Prior to

January 1993, and occasionally after January 1993, PTS submitted paper Medicare claim forms containing similar certifications.

43. For at least the period June 30, 1997 to approximately June 1999, and, we anticipate that a reasonable opportunity for further investigation and discovery will establish that, for the period 1991 to June 1999, defendants PTS, Kevin Wise, and Shirley Wallace knew, deliberately ignored, or recklessly disregarded that the claims submitted to Medicare and Medicaid by PTS in which it described the condition of each dialysis patient on the specific day the patient was transported were false or fraudulent and did not represent the accurate physical condition of the patient on that day, and that PTS was falsely stating that patients were bed-confined, moved by stretcher, and that the transports were medically necessary.

44. During the period June 30, 1997 to June 1999, and, we anticipate that a reasonable opportunity for further investigation and discovery will establish that, for the period January 1993 to June 1999, PTS and Kevin Wise knowingly falsely certified to the truthfulness and accuracy of electronic claim forms submitted to Medicare for transport of dialysis patients. We further anticipate that a reasonable opportunity for further discovery will establish that, for the period 1991 to June 1999, PTS knowingly falsely certified to the truthfulness and accuracy of paper claim forms submitted to Medicare for transport of dialysis patients.

45. Medicare and Medicaid would not have paid these claims if they had known that the patients could sit, stand or walk and/or

that their physical condition did not contraindicate transportation by any other means and/or that Medicare and Medicaid's requirements for reimbursement of ambulance transport otherwise were not met.

46. Defendants PTS and Donald Wise were unjustly enriched by these false claims in that they received monies to which they were not entitled.

47. During the period 1997 to 1999, and, we anticipate that a reasonable opportunity for further investigation and discovery will establish that, for the period 1991 to June 1999, Donald Wise transferred large sums of money from the PTS checking account to his own personal accounts, including approximately $745,000 in 1997 alone. We anticipate that a reasonable opportunity for further investigation and discovery will establish that these transfers were not in exchange for any services performed or other value provided by Donald Wise. Among other things, the transfers were not made on a regular basis and the amounts transferred varied each time. In addition, Donald Wise used checks drawn directly on the PTS checking account to purchase items for his own personal use, including but not limited to a bulldozer, jewelry, and a tractor.

48. The facts material to plaintiff's right of action relevant to the allegations of paragraphs 1-47 were unknown to and reasonably could not have been known to officials of the United States charged with responsibility to act in the circumstances until within the time prescribed by the statute of limitations.

### FIRST CAUSE OF ACTION

**False Claims Act: Submission of False Claims**

**Defendants PTS, Kevin Wise, and Shirley Wallace**

49. The United States realleges and incorporates by reference paragraphs 1 through 48 above as if set forth fully herein.

50. By virtue of the acts described above, defendants PTS, Kevin Wise, and Shirley Wallace knowingly presented or caused to be presented to the United States false or fraudulent Medicare and Medicaid claims for payment or approval, in violation of the False Claims Act, as amended, 31 U.S.C. § 3729(a)(1); that is defendants PTS, Kevin Wise, and Shirley Wallace knowingly made or presented, or caused to be made or presented, to the United States claims for payment for services which were false, in that the services claimed for were not medically necessary or otherwise did not qualify for reimbursement under the Medicare or Medicaid programs.

51.  By reason of the foregoing, the United States suffered actual damages in an amount to be determined at trial.

### SECOND CAUSE OF ACTION

**False Claims Act: False Statements to Get a Claim Paid**

**Defendants PTS, Kevin Wise, and Shirley Wallace**

52. The United States realleges and incorporates by reference paragraphs 1 through 48 above as if set forth fully herein.

53. By virtue of the acts described above, defendants PTS, Kevin Wise, and Shirley Wallace knowingly made or used or caused to be made or used a false record or statement to get a false or fraudulent Medicare and Medicaid claim paid or approved by the

United States, in violation of the False Claims Act, as amended, 31 U.S.C. § 3729(a)(2); that is defendants PTS, Kevin Wise, and Shirley Wallace knowingly made or used or caused to be made or used false Medicare and Medicaid claim forms and supporting backup materials, such as internal billing forms, and false certifications of the truthfulness and accuracy of claims submitted, to get false or fraudulent Medicare and Medicaid claims paid or approved by the United States, in that the services claimed for were not medically necessary or otherwise did not qualify for reimbursement under the Medicare or Medicaid programs.

54.   By reason of the foregoing, the United States suffered actual damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**

**Payment under Mistake of Fact/Restitution**

**Defendant PTS**

55. The United States realleges and incorporates by reference each allegation in paragraphs 1 through 48 as if fully set forth herein.

56.   This is a claim for the recovery of monies paid to defendant PTS under mistake of fact.

57.   The above described false claims and false statements which defendants PTS, Kevin Wise, and Shirley Wallace submitted to the United States through Blue Cross and DMS constituted misrepresentations of material fact in that they misrepresented the conditions of the patients and therefore the medical necessity for the transportation, as well as other facts necessary to establish

entitlement to reimbursement under the Medicare or Medicaid programs.

58. The United States, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid PTS certain sums of money to which it was not entitled, and PTS is thus liable to account for and pay such amounts, which are to be determined at trial, to the United States.

### FOURTH CAUSE OF ACTION

#### Unjust Enrichment/Restitution

#### Defendants PTS and Donald Wise

59. The United States realleges and incorporates by reference each allegation in paragraphs 1 through 48 as if fully set forth herein.

60. This is a claim for recovery of monies by which defendants PTS and Donald Wise have been unjustly enriched.

61. By virtue of the false claims and false statements described above, PTS wrongfully obtained Medicare and Medicaid funds to which it was not entitled. By virtue of the transactions described above, Donald Wise indirectly obtained these funds by, among other things, transferring PTS funds to himself and by purchasing personal items with funds drawn on the PTS checking account.

62. By directly or indirectly obtaining Medicare and Medicaid funds to which they were not entitled, defendants PTS and Donald Wise were unjustly enriched at the expense of the United States, and are liable to account and pay such amounts, or the proceeds

therefrom, which are to be determined at trial, to the United States.

## FIFTH CAUSE OF ACTION

### Fraudulent Conveyances Under the

### Federal Debt Collection Procedures Act

### Defendants PTS and Donald Wise

63. Plaintiff realleges and incorporates by reference each allegation in paragraphs 1 through 48 as if fully set forth herein.

64. This is a claim for fraudulent conveyances under the Federal Debt Collection Procedure Act (FDCPA), 28 U.S.C. § 3001, et seq., and for any and all appropriate remedies available under the FDCPA.

65. Defendants PTS and Donald Wise were in possession or had the right to possession of certain property, including without limitation money and other property held by PTS.  Defendants PTS and Donald Wise knew or should have known of their outstanding debt to the United States as described in this Complaint.  Defendants PTS and Donald Wise did fraudulently transfer PTS property in order to avoid paying their debt to the United States (a) with the actual intent to hinder, delay, and/or defraud the United States, or (b) by transferring property without obtaining reasonably equivalent value for that property, or (c) which rendered them insolvent in regard to the defendants' debt to the United States.  Examples of these fraudulent conveyances include, but are not limited to, the above-described transfers of cash from PTS to Donald Wise's

personal accounts and Donald Wise's purchases of personal items using funds drawn on the PTS checking account.

66. Because the aforementioned transactions were fraudulent conveyances which were designed to strip or which had the effect of stripping defendant PTS of assets so that the debt to the United States was not collectable, these transactions should be unwound and the assets should be ordered transferred to the United States or, in the alternative, defendant Donald Wise should be ordered to pay the value of these assets to the United States.

67. Due to the above described acts of defendants PTS and Donald Wise, the United States has been injured because these defendants have rendered or are attempting to render PTS insolvent as against the debts owed to the United States.

68. The above acts of defendants PTS and Donald Wise have demonstrated their intent to hinder, delay and defraud the United States by assigning, disposing, removing, concealing, ill treating, wasting, destroying, and converting property that would otherwise be available to satisfy PTS' debts to the United States, or, in the alternative, that these defendants entered into said transactions which rendered PTS insolvent in the face of its debt to the United States. Plaintiff requests that, upon application of the United States, the property of defendants Donald Wise and PTS be subject to pre-judgment remedies under the FDCPA, including but not limited to attachment, receivership, garnishment, and/or sequestration.

## PRAYER FOR RELIEF

WHEREFORE, the United States demands judgment against the defendants as follows:

### As to Counts I & II (False Claims Act):

Against defendants PTS, Kevin Wise and Shirley Wallace, and that the judgment be for:

1.  statutory damages in an amount to be established at trial and such penalties as are allowed by law;

2.  the costs of this action, plus interest, as provided by law; and

3.  any other relief that this Court deems appropriate.

### As to Count III (Payment By Mistake of Fact/Restitution):

Against defendant PTS, and that the judgment be for:

1.  an amount equal to the money paid by the United States to PTS, plus interest;

2.  the costs of this action, plus interest, as provided by law; and

3.  any other relief that this Court deems appropriate.

### As to Count IV (Unjust Enrichment/Restitution)

Against defendants PTS and Donald Wise, and that the judgment be for:

1.  an amount equal to the money paid by the United States to PTS, and any such amounts transferred to or otherwise obtained by Donald Wise, plus interest;

2.  the costs of this action, plus interest, as provided by law; and

3.   any other relief that this Court deems appropriate.

### As to Count V (FDCPA)

Against defendants PTS and Donald Wise, and that judgment for:

1.   an amount equal to the value of all property fraudulently transferred;

2.   a pre-judgment order of attachment, receivership, garnishment, and/or sequestration as requested by the United States by separate application upon reasonable showing that the United States has reasonable cause to believe that defendants PTS or Donald Wise have or are about to assign, dispose, remove, conceal, ill treat, waste, destroy, or convert property with the effect of hindering, delaying, or defrauding the United States;

3.   the costs of this action, plus interest, as provided by law;

4.   any other remedies available under the FDCPA; and

5.   any other relief that this Court deems appropriate.


MICHAEL D. JOHNSON
United States Attorney for the
Eastern District of Arkansas

DOUG CHAVIS
Assistant United States Attorney
P.O. Box 1229
Little Rock, AR 72203
501-324-5342

Dated:   July 20, 2001